**Elizabeth A. FLUKER, et al., Appellant,**

**v.**

**Glenn V. LYNCH, Defendant,**

**R.D. Williams, Inc., Respondent.**

**No. WD 52315.**

Missouri Court of Appeals,
Western District.

Submitted Oct. 10, 1996.

Decided Feb. 18, 1997.

James A. Fluker, Kansas City, for appellant.

Karen R. Glickstein, Kansas City, for respondent.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

SMART, Judge.

This action involves an issue of negligent entrustment of an automobile to an allegedly intoxicated individual who was later involved in a collision. James and Elizabeth Fluker appeal from the trial court's entry of summary judgment in favor of R.D. Williams, Inc. Because we conclude that there are no genuine issues of material fact, and that defendant is entitled to judgment as a matter of law, we affirm.

On February 24, 1993, Glenn Lynch drove to an automobile dealership, R.D. Williams, Inc., doing business as Williams Ford ("Williams Ford"), seeking to trade in his car for a different car. He filled out a credit application, which was approved about a day later. On February 26, Lynch returned to the dealership and test drove a 1986 Subaru. Williams Ford agreed to let Lynch drive the Subaru to work that day. Lynch completed and signed several documents at the dealership, including a document entitled "Agreement–Temporary Loan of Motor Vehicle," a retail installment contract, a security agreement, an application for title, and a retail order for a motor vehicle. Williams Ford prepared a Certificate of Title to reassign title to Lynch. The arrangement included a trade-in by Lynch of the car he had been driving. The parties dispute the time of day the documents were signed. Daniel Piñon, Sales Manager/Finance Manager for Williams Ford in 1993, stated in an affidavit that Lynch filled out the document entitled "Agreement–Temporary Loan of Motor Vehicle" before he took the vehicle to test drive for the day. Piñon attested that Lynch then returned to the dealership on Friday evening, February 26, to fill out the rest of the paperwork, after deciding to purchase the vehicle. Lynch, in a deposition, testified that he did not return to the dealership on February 26 and that all the paperwork, including the document concerning the loan of the vehicle, was completed on the morning of February 26. There is no dispute that the documents were executed and signed by Lynch.

Lynch stated that he and Piñon agreed that Lynch would return the following morning to finalize the purchase, after procuring insurance on the vehicle. Lynch asserted that he believed that when he left the dealership the deal had not been finalized because he had not procured automobile insurance. He also understood there was some additional paperwork processing to be done. The dealership's license plates remained on the vehicle when Lynch left the dealership. Williams Ford claims the car had been delivered to Lynch pursuant to the sale of the vehicle, and that the license plates were inadvertently left on the automobile. The dealership claims that the only thing remaining was the purchase of insurance, but that as between Lynch and the dealer, the transaction was complete.

Lynch testified in the deposition that on Saturday, February 27, 1993, he obtained insurance coverage for the vehicle. Shortly thereafter, while Lynch was driving the Subaru, he collided with the automobile driven by Elizabeth Fluker. On November 15, 1993, the Flukers filed suit against Lynch and Williams Ford. The Flukers alleged in the petition that Williams Ford negligently entrusted the Subaru to Lynch, while Lynch was noticeably intoxicated. The petition further alleged that Lynch's driving record showed at least four prior alcohol-related traffic offenses. According to the Flukers, Williams Ford, through the exercise of due care, should have known of this information. Also included is James Fluker's claim against Williams Ford for loss of consortium. The petition prayed for actual damages, as well as punitive damages. On September 14, 1995, the trial court granted Williams Ford's motion for summary judgment. After denial of their motion for reconsideration, the Flukers appeal.

### Findings

■ In Point I, the Flukers contend that the trial court erred in granting summary judgment for Williams Ford because the trial court failed to make specific findings. They contend that the court thus violated Rule 74.04. The record fails to show that the Flukers presented this claim of error to the trial court. Thus, this contention of error was not properly preserved for appellate review. *Artman v. State Bd. of Registration*

*for the Healing Arts,* 918 S.W.2d 247, 252 (Mo. banc 1996). Point I is denied.

### Ownership Issue

In Point II, the Flukers claim that the trial court erred in granting summary judgment for Williams Ford because there was a genuine issue of fact as to whether ownership had passed to Lynch.

This court's review of summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is properly granted only when there is no genuine dispute as to any material fact and the movant has demonstrated a right to judgment as a matter of law. *Id.* The party opposing summary judgment bears the burden of establishing a genuine issue of material fact. *Id.* at 381–82.

■ Section 301.210, RSMo 1994 [1] governs the sale or transfer of used automobiles. This section provides:

1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, with a statement of all liens or encumbrances on such motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of such motor vehicle or trailer.

Strict and technical compliance with § 301.210 is required for ownership to pass from one individual to another. *Herbert v. Harl,* 757 S.W.2d 585, 589 (Mo. banc 1988). Delivery can be actual or constructive. *National Indem. Co. v. Liberty Mut. Ins. Co.,* 513 S.W.2d 461, 466 (Mo.1974). Section 301.620 provides that if an owner creates a lien or encumbrance on a motor vehicle:

(1) The owner shall immediately execute the application, in the space provided therefor on the certificate of ownership or on a separate form the director of revenue prescribes, to name the lienholder on the certificate, showing the name and address of the lienholder and the date of his security agreement, and cause the certificate, application and the required fee to be delivered to the lienholder.

*See also National Indem. Co.,* 513 S.W.2d at 466 (where the trial court held under specific facts presented in that case that the fact that a purchaser of an automobile did not physically touch or even see the assigned title certificate did not invalidate the transaction in accordance with § 301.620).

The Flukers contend that summary judgment was inappropriate in this case because a material fact, i.e., whether the transaction for the purchase of the 1986 Subaru was finalized, was disputed. Flukers argue that because the paperwork had not been forwarded to the lienholder at the time of the collision, the transaction was not final. Williams Ford strongly contends that the purchase of the automobile was finalized on the evening of February 26th, because Lynch and the dealership had executed all of the documents involved in the transfer of title. In spite of the parties' different characterization of the transaction, the truth is unmistakable that, for all practical purposes, once Lynch obtained insurance coverage, everything was complete except the delivery of the paperwork to the lender. It may be that, under § 301.620, the final operative event of a legally completed sale is the delivery of the paperwork to the lender. However, we conclude that we need not decide whether the transaction was technically completed, for the reasons discussed below.

### Negligent Entrustment

■ The Flukers contend that the trial court erroneously granted the summary judgment motion because the trial court misapplied the facts and law in that the evidence showed that ownership had not changed. We conclude that the issue of ownership is not the critical issue. Regardless of which party was correct about the legal status of the transaction at the time of the accident, it is clear from the record that Lynch intended to purchase the vehicle. He had completed the paperwork necessary to obtain a loan and

1. All statutory references are to Missouri Revised Statutes 1994, unless otherwise indicated.

to complete the transaction. He then obtained the necessary insurance protection. The only thing remaining after the purchase of insurance was the final forwarding of the paperwork package to the lender by the dealer. At the time of the collision, neither Lynch nor the dealer had any intention that Lynch would return the vehicle to the dealer, nor was there any need for Lynch to return the car to the dealer. Although he may have intended to drive the car back to the dealer with his proof of insurance, he also had the option of mailing or faxing the proof of insurance to the dealer. The dealer had relinquished the car to Lynch. The sale may have been still executory in the sense that Lynch, we assume, could have changed his mind during the executory period. However, it is clear from the record that he had no intention of changing his mind, and that he did not do so, either before or after the collision. From the standpoint of both parties, the car had been permanently relinquished to Lynch. Thus, we conclude that this case is not a negligent entrustment case. If anything, it is a claim of "negligent sale" of a vehicle. No such theory has been pleaded; and, although plaintiffs hint at such an idea in their brief, plaintiffs provide us with no authority for such a theory.

Lynch had an operator's license at the time of the sale, and was driving his own vehicle prior to this transaction. Even if, as pleaded, Lynch had appeared intoxicated at the time of the transaction, we do not believe any potential liability of the dealer could extend to this collision. Lynch testified in his deposition that he began drinking just before 10:00 a.m. on the morning of Saturday, the 27th, the day of the collision. There was no testimony about any alcohol consumption on the 26th, the day he received the vehicle. If Lynch were drinking on the 26th, it was apparently a separate drinking incident from that on the 27th. Plaintiffs provide us with no authority for the proposition that a dealer could be liable for a collision occurring within the scope of a subsequent drinking incident more than 24 hours after an allegedly negligent relinquishment of a vehicle.

For all of the foregoing reasons, we conclude that, as a matter of law, plaintiff may not prevail on a theory of negligent entrustment, and that there remains no genuine issue of material fact.

The judgment is affirmed.

SPINDEN and ELLIS, JJ., concur.