Sharon SANSONETTI, Mary K. Mathews, and Tyler Douglas Mathews, by his Next Friend Mary K. Mathews, Appellant,

v.

CITY OF ST. JOSEPH, Missouri, Frank Till, Respondents,

Sabas Hernandez–Gonzalez, Defendant,

Allstate Insurance Company, Steve Manville, Respondents.

No. WD 55113.

Missouri Court of Appeals, Western District.

Aug. 18, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1998.

Application for Transfer Denied Oct. 20, 1998.

Robert K. Ball, II, Kansas City, for appellant.

Richard F. Modin. Dougherty, Modin & Holloway, Kansas City, for respondents.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

ULRICH, Judge.

Sharon Sansonetti, Mary Mathews, and Tyler Mathews (Appellants) appeal the summary judgments entered by the trial court in favor of Frank Till, the City of St. Joseph, Allstate Insurance Company, and Steve Manville (Respondents). Appellants brought a negligence action against Respondents and Sabas Hernandez–Gonzalez for damages arising out the collision of a 1976 Chevrolet Caprice driven by Mr. Gonzalez with Appellants' home during a high-speed chase by Officer Till of the St. Joseph Police Department. Respondents filed separate motions for summary judgment, and the motions were granted by the trial court.

The judgment of the trial court is affirmed.

**FACTS**

Steve Manville purchased a 1976 Chevrolet Caprice from Connie Schooling on November 28 or 29, 1993, for $25. Mr. Manville planned to drive the car in a demolition derby at the Platte County Fair the next summer. At the time of the purchase, Ms. Schooling signed the Certificate of Title as the seller.

The next day, Mr. Manville sold the 1976 Caprice to Sabas Hernandez–Gonzalez for $200. The two men arranged for Mr. Gonzalez to pay for the vehicle at a later date, and Mr. Gonzalez left with the car. On November 31, 1993, Mr. Gonzalez signed the title as the purchaser, and Mr. Manville typed his name and address in the section of the title designated for the lienholder.[1] Mr. Gonzalez then took the title and put it in the glove compartment of the car where it stayed until the accident.

Two weeks later, in the early morning hours of December 13, 1993, Officers Till and Ogdahl of the St. Joseph Police Department were dispatched to a residence at 2910 Olive to investigate a report of a man attempting to break into the residence. Two days earlier, the police department had received a report of a person with a knife attempting to break into the same residence. Upon arriving at the residence on December 13, the officers observed a man standing near a large, blue car parked in front of the residence. Another man, later identified as Mr. Gonzalez, was seated in the driver's seat of the car. The officers parked behind the blue car and exited their vehicle. As they approached the two men, the man standing outside the car began to walk down the street, and Mr. Gonzalez drove away. Officer Ogdahl pursued the man on foot, and Officer Till returned to the patrol car to follow Mr. Gonzalez. During the pursuit, Mr. Gonzalez ran a stop sign. At that point, Officer Till activated the red emergency lights and siren on the patrol vehicle. Mr. Gonzalez continued to flee and accelerated to a speed in excess of 80 miles per hour. As his automobile crested a hill, Mr. Gonzalez lost control of the car and crashed into the living room of Appellants' house.

At the time of the collision, Sharon Sansonetti and eleven-month-old Tyler Mathews were in a bedroom adjoining the living room. Mary Mathews was entering the living room from the porch and was pushed back outside as the car entered the house.

Mr. Gonzalez was arrested and charged with driving while intoxicated, careless driving, and failure to yield to an emergency vehicle. He was also issued numerous other traffic tickets. A breathalyzer test administered to Mr. Gonzalez revealed a blood alcohol content of .18 percent. Mr. Gonzalez was also charged with second degree assault for causing physical injury to Mary Mathews as a result of the accident.

In March 1995, Appellants filed their first amended petition against Respondents and Mr. Gonzalez seeking damages for destruction of their real and personal property and for personal injuries resulting from the collision. The petition alleged that Officer Till,

---

1. In his deposition, Mr. Manville testified that a bank employee instructed him that he had thirty days from the date of purchase of the vehicle to resell it or pay sales tax and that if he did resell the car within thirty days, his name did not have to appear on the title.

an employee of the City of St. Joseph, was careless and negligent in pursuing Mr. Gonzalez at a high rate of speed (a) under the existing conditions; (b) when he should have known that such chase would endanger the life, person, and property of citizens of the City of St. Joseph; and (c) in violation of the rules and regulations of the St. Joseph Police Department. The petition further alleged that Mr. Gonzalez was careless and negligent in operating his motor vehicle at a high rate of speed while under the influence of an intoxicating liquor or drug and in fleeing from a law enforcement vehicle. The petition alleged that Mr. Manville was the owner of the vehicle operated by Mr. Gonzalez and was careless and negligent in entrusting the possession and operation of the vehicle to Mr. Gonzalez when he should have known Mr. Gonzalez was not competent, qualified, or licensed to operate the vehicle. Finally, the petition sought damages on behalf of Tyler Mathews for intentional infliction of emotional distress from Allstate Insurance Company under the uninsured motorist provision of the automobile insurance policy issued to Appellants.

Officer Till and the City of St. Joseph filed a motion for summary judgment claiming, *inter alia*, the absence of proximate cause. In his motion for summary judgment, Mr. Manville argued that Appellants' claim of negligent entrustment failed as a matter of law because Mr. Manville permanently relinquished the car to Mr. Gonzalez and no causal connection existed between the sale of the automobile to Mr. Gonzalez and the accident two weeks later. Allstate Insurance Company also filed a motion for summary judgment claiming no evidence existed that Tyler Mathews suffered from severe emotional distress. The trial court granted the Respondents' motions for summary judgment. Appellants dismissed their claim against Mr. Gonzalez without prejudice, and this appeal followed.

## STANDARD OF REVIEW

■ Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial*

*Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

■ Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

■ Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler*, 921 S.W.2d 16, 19 (Mo.App.1996).

## CLAIM AGAINST OFFICER FRANK TILL AND THE CITY OF ST. JOSEPH

In their first point on appeal, Appellants claim that the trial court erred in granting summary judgment in favor of Officer Till and the City of St. Joseph based on a lack of proximate cause.[2]

---

**2.** Although the trial court did not base its grant of summary judgment on the doctrine of official

immunity, Appellants' first point regarding Officer Till and the City of St. Joseph is dedicated to

In a negligence action, a plaintiff must prove the following elements: (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) that the defendant's breach was the proximate cause of the plaintiff's injury, and (4) injury to the plaintiff. *Peoples v. Conway,* 897 S.W.2d 206, 207 (Mo.App.1995). The test for factual causation is whether the plaintiff's injury would not have occurred *but for* the defendant's conduct. *Id.* at 208. Besides *but for* causation, proximate cause also requires that the plaintiff's injury is a *reasonable and probable consequence* of the act or omission of the defendant. *Id.*

Generally, a police officer is not liable for damages caused by a vehicle being pursued by the officer in the performance of his duties. *Oberkramer v. City of Ellisville,* 706 S.W.2d 440, 442 (Mo. banc 1986); *Conway,* 897 S.W.2d at 208. Only where a plaintiff alleges specific violations of a statute or formal policy by a police officer could liability be found on the part of the officer. *Id.* The proximate cause of the accident is the manner in which the pursued traffic violator drove his motor vehicle, not the operation of the police vehicle by the officer. *Id.*

Section 304.022, RSMo 1994, authorizes a driver of a police vehicle to exceed the maximum speed limit and disregard certain other traffic regulations so long as he does not endanger life or property. § 304.022.4(2), RSMo 1994; *Oberkramer,* 706 S.W.2d at 442. The statute provides in pertinent part:

(2) The driver of an emergency vehicle may:

(a) Park or stand irrespective of the provisions of sections 304.014 to 304.026;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the prima facie speed limit so long as he does not endanger life or property;

(d) Disregard regulations governing direction of movement or turning in specified directions;

(3) The exemptions herein granted to an emergency vehicle shall apply only when the driver of any such vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle.

§ 304.022.4(2) & (3), RSMo 1994.

In this case, Appellants alleged in their petition that Officer Till, an employee of the City of St. Joseph, was careless and negligent in pursuing Mr. Gonzalez at a high rate of speed under the existing conditions when he should have known that such pursuit would endanger the life, person, and property of citizens of the City of St. Joseph. They alleged that Officer Till negligently operated his patrol car in violation of the rules and regulations of the police department. Appellants, however, did not specify the rules and regulations allegedly violated by Officer Till or the acts of Officer Till that constituted a violation of the rules or regulations.[3]

In his motion for summary judgment, Officer Till alleged that he began pursuing Mr. Gonzalez after Mr. Gonzalez fled from a residence where Officer Till was investigating an attempted break-in. Soon after Officer Till began to follow Mr. Gonzalez, Mr. Gonzalez ran a stop sign and exceeded the speed limit. During the pursuit, Officer Till activated the red emergency lights and the siren and air horn on the police vehicle he was driving.

A law enforcement officer's statutorily authorized pursuit of person who is driving a vehicle and who is suspected of having committed a crime, or who is in the process of committing a crime, is not a negligent act. The occurrence of a vehicular accident by the

---

that issue. Because the trial court's grant of summary judgment is affirmed on the basis of a lack of proximate cause, the doctrine of official immunity is not reached in this opinion. *Baidy v. Marah,* 760 S.W.2d 195, 196 (Mo.App.1988).

3. Appellants sought to amend their pleadings to allege violation of specific St. Joseph Police Department rules, but the trial court denied their motion to amend. They do not claim error on appeal regarding the trial court's denial.

person being pursued is not, by itself, proof that the pursuing officer was negligent. The plaintiff must assert facts that as to how and why the law enforcement officer was negligent. Appellants failed to plead any acts of negligence by Officer Till regarding the manner he drove his police vehicle. The proximate cause of the accident was not the manner in which Officer Till operated his police vehicle but rather the manner in which Mr. Gonzalez drove the pursued vehicle. Because the acts of Officer Till were not the proximate cause of the collision, Officer Till was entitled to judgment as a matter of law.

Appellants filed a response to Officer Till's motion for summary judgment but failed to produce substantial and essential facts to contradict Officer Till's assertion that he was not negligent in pursuing Mr. Gonzalez in the performance of his duties in an emergency situation. They did not provide evidence that the officer violated section 304.022 or any other applicable statute or regulation. No genuine issue of material fact existed, and, therefore, the trial court did not err in granting summary judgment in favor of Officer Till.

■ Appellants' petition alleged no independent acts of negligence by the City of St. Joseph. Apparently, Appellants' relied on the doctrine of respondent superior to allege liability against the City of St. Joseph based on the alleged negligence of its employee, Officer Till. Where a claim, however, is made under the respondent superior doctrine, and judgment is rendered exonerating the employee from liability, the employer must also be exonerated. *Conway*, 897 S.W.2d at 208. In particular, where a police officer is exonerated from liability in a negligence action, his employer is equally discharged. *Id.* Because Officer Till was not liable for the alleged injuries of Appellants, no ground for recovery existed against his employer, the City of St. Joseph. Summary judgment was properly entered in favor of the City.

Point one is denied.

## CLAIM AGAINST STEVE MANVILLE

In their next point on appeal, Appellants claim that the trial court erred in granting summary judgment in favor of Steve Manville on their negligent entrustment claim. They contend that the transaction between Mr. Manville and Mr. Gonzalez did not constitute a sale, and, therefore, Mr. Manville was the owner of the 1976 Caprice when Mr. Gonzalez drove it into Appellants' home two weeks later. Appellants further argue that Mr. Gonzalez was incompetent to operate the motor vehicle and that Mr. Manville knew of his incompetence when he entrusted the car to him.

■ An owner of an automobile may be liable for negligent entrustment if he, knowingly or having the means of knowledge, turns his car over to a driver who is incompetent by reason of age, inexperience, habitual recklessness, or otherwise. *Bell v. Green*, 423 S.W.2d 724, 732 (Mo. banc 1968). The essential elements of a negligent entrustment action are (1) that the entrustee is incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) that the entrustor knew or had reason to know of the entrustee's incompetence; (3) that there was an entrustment of the chattel; and (4) that the negligence of the entrustor concurred with the conduct of the entrustee as a proximate cause of the harm to plaintiff. *Evans v. Allen Auto Rental and Truck Leasing, Inc.*, 555 S.W.2d 325, 326 (Mo. banc 1977).

■ Appellants alleged in their petition that Mr. Manville was the owner of the vehicle operated by Mr. Gonzalez and was careless and negligent in entrusting the possession and operation of the vehicle to Mr. Gonzalez when he should have known Mr. Gonzalez was not competent, qualified, or licensed to operate the vehicle. In his motion for summary judgment, Mr. Manville argued that he sold the automobile to Mr. Gonzalez two weeks before the accident, and, as a result, the negligent entrustment action could not stand. The trial court agreed, and based on *Fluker v. Lynch*, 938 S.W.2d 659 (Mo.App.1997), granted summary judgment in favor of Mr. Manville.

In *Fluker*, plaintiffs sued an automobile dealership claiming that the dealership negligently entrusted an automobile to an allegedly intoxicated person who was involved in a

collision with plaintiffs. *Fluker*, 938 S.W.2d at 660. The trial court granted summary judgment in favor of the dealership. *Id.* On appeal, plaintiffs claimed that a genuine issue of fact existed regarding whether ownership had passed to the driver. *Id.* at 661. Plaintiffs argued that because the requisite paperwork had not been forwarded to the lienholder pursuant to section 301.620, RSMo 1994, at the time of the collision, the transaction was not final and the dealership remained the owner of the car. *Id.* The dealership, however, contended that the purchase of the automobile was finalized the day before the collision because the dealership and the driver had executed all documents involved in the transfer of title. *Id.*

In affirming the trial court's grant of summary judgment, this court concluded that the issue of whether the transaction was technically completed did not need to be decided because the issue of ownership was not critical. *Id.* This court stated, "Regardless of which party was correct about the legal status of the transaction at the time of the accident, it is clear from the record that [the driver] intended to purchase the vehicle." *Id.* It explained that the driver had completed the necessary paperwork and had obtained insurance. *Id.* at 662. The court further stated, "At the time of the collision, neither [the driver] nor the dealer had any intention that [the driver] would return the vehicle to the dealer." *Id.* Finally, the court concluded that the car had been permanently relinquished to the driver, thus, the case was not a negligent entrustment case. *Id.*

Similarly, in this case, the record revealed that Mr. Manville intended to sell and that Mr. Gonzalez intended to purchase the automobile. Two weeks before the accident, Mr. Gonzalez agreed to purchase the car for $200 and pay for it at a later date. The next day, he signed the title as the purchaser, and Mr. Manville designated himself as the lienholder. Mr. Gonzalez then left with the title and the car. Whether the sale of the automobile

was technically correct is irrelevant to Appellants' claim. *See Id.* Both Mr. Manville and Mr. Gonzalez intended there be a sale, and the car was permanently relinquished to Mr. Gonzalez. The case, therefore, is not a negligent entrustment case. Because Mr. Manville permanently relinquished the car to Mr. Gonzalez and there was no entrustment, he was not liable under a negligent entrustment theory as a matter of law, and no genuine issue of material fact remained.

Point two is denied.

## CLAIM AGAINST ALLSTATE INSURANCE COMPANY

In their final point on appeal, Appellants claim that the trial court erred in granting summary judgment in favor of Allstate Insurance Company on Tyler Mathews's claim for intentional infliction of emotional distress based on the lack of evidence that the injury was medically diagnosable.[4] They contend that the tort of intentional infliction of emotional distress does not require the emotional distress or mental injury be medically diagnosable and sufficiently severe to be medically significant as announced in *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983), for the tort of negligent infliction of emotional distress.

■■■ To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Warrem v. Parrish*, 436 S.W.2d 670, 673 (Mo.1969)).

According to *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–773 (Mo. banc 1983), the

---

4. Appellants also argue that the trial court erred in striking certain statements contained in Allstate's statement of uncontroverted material facts as hearsay. They argue that the statements regarding what Tyler's pediatrician did or did not do in response to hearing of Tyler's alleged symptoms of emotional distress could not support Allstate's motion for summary judgment. This issue need not be decided, however, because the statements are not necessary to affirm the granting of summary judgment.

emotional distress or mental injury necessary to recover damages in a negligent infliction of emotional distress case must be medically diagnosable and sufficiently severe to be medically significant. Some Missouri courts have extended this standard to cases involving intentional infliction of emotional distress. *Hyatt v. Trans World Airlines, Inc.*, 943 S.W.2d 292, 297 (Mo.App.1997). Whether this standard is applicable to intentional infliction of emotional distress cases, however, does not need to be considered here. The determining factor in this case is Respondents' and Mr. Gonzalez's intent to cause extreme emotional distress to Tyler Mathews.

In an intentional infliction of emotional distress case, the defendant's conduct must have been intended only to cause extreme emotional distress to the victim. *Gibson*, 952 S.W.2d at 249 (citing *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996)). The rationale for this rule is that the tort was "intended to supplement existing forms of recovery, not swallow them." *K.G.*, 918 S.W.2d at 799. Therefore, where the conduct was intended to invade other legally protected interests of the plaintiff or to cause bodily harm, a claim for intentional infliction of emotional distress will not lie. *Id.*

In their petition, Appellants alleged that as the result of Defendants Frank Till's, Steve Manville's, and Sabas Hernandez–Gonzalez's wanton, willful, malicious, and outrageous conduct, Tyler was subjected to severe emotional distress and trauma. Appellants' allegations, however, do not support an inference that the sole purpose of Officer Till's, Mr. Manville's, and Mr. Gonzalez's conduct was to invade eleven-month-old Tyler's interest in freedom from emotional distress. *See Gibson*, 952 S.W.2d at 249; *K.G.*, 918 S.W.2d at 799. Because no evidence was presented that Officer Till, Mr. Manville, and Mr. Gonzalez intended only to cause extreme emotional distress to Tyler, Allstate was entitled to summary judgment as a matter of law and no genuine issue of material fact remained. The trial court did not err in granting summary judgment in favor of Allstate Insurance Company.

Point three is denied.

The judgment of the trial court is affirmed.

All concur.