Carolee **NOBLE**, et al., and Jo Ann K. Nilges, et al., Appellants,

v.

**SHAWNEE GUN SHOP, INC.**, Respondent.

Nos. WD 75536, WD 75537.

Missouri Court of Appeals, Western District.

July 16, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 2013.

Application for Transfer Denied Oct. 29, 2013.

Randy W. James, Lee's Summit, MO, for appellant.

Kelly A. Ricke, Overland Park, KS, for respondent.

Before Division Two: ALOK AHUJA, P.J., and KAREN KING MITCHELL and ANTHONY REX GABBERT, JJ.

ALOK AHUJA, Judge.

These consolidated appeals involve two separate lawsuits which were dismissed for identical reasons by the Circuit Court of Jackson County. The plaintiffs in each case brought claims against Shawnee Gun Shop, Inc. d/b/a/ The Bullet Hole. The plaintiffs alleged that the Gun Shop was negligent in selling firearm ammunition and/or magazines to a purchaser who later used the items to shoot and kill two individuals. The circuit court dismissed both cases for failure to state a claim upon which relief can be granted. We affirm.

## Background

Because this case was decided on a motion to dismiss, we assume the truth of the allegations of the petitions filed in the two underlying cases. The Gun Shop operates a retail store selling firearms, ammunition, and related merchandise in Overland Park, Kansas. According to the petitions, David W. Logsdon purchased firearm magazines and/or ammunition from the Gun Shop on April 24, 2007, using a credit card which he had stolen from Patricia Reed. Reed was Logsdon's neighbor, and was found dead in her home; Logsdon is suspected of murdering her.

On April 29, 2007, it is believed that Logsdon used the ammunition and/or magazines he purchased from the Gun Shop in a shooting spree in the parking lot of the Ward Parkway Shopping Center in Kansas City, during which he shot and killed Luke Nilges and Leslie Noble Ballew, in addition to injuring several other people. Logsdon was later shot and killed by police inside the shopping center.

Nilges' parents, Jo Ann and Wayne Nilges, and Ballew's parents, Carolee and Leo Noble (collectively "Appellants"), filed separate wrongful-death actions against the Gun Shop in the circuit court, alleging that the Gun Shop was negligent in its sale of the magazines and/or ammunition to Logsdon. Appellants alleged that Logsdon's use of Reed's stolen credit card to purchase the ammunition and/or magazines should have alerted the Gun Shop that Logsdon's purchase presented a risk of serious injury.

The circuit court dismissed both cases in 2009 for lack of personal jurisdiction over the Gun Shop. We reversed, and remanded the cases to the circuit court for further proceedings. *Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364 (Mo.App.W.D. 2010).

On April 17, 2012, the Gun Shop filed motions to dismiss in both cases, alleging that Appellants' petitions failed to state claims upon which relief could be granted. In response, Appellants requested and were given leave to file amended petitions. On June 15, 2012, the Gun Shop renewed its motions to dismiss. The circuit court dismissed both cases with prejudice on August 24, 2012.

## Standard of Review

The standard of review for a circuit court's grant of a motion to dismiss is de novo. A motion to dismiss for failure to state a claim on which relief can be granted is an attack on the plaintiff's pleadings. Such a motion is only a test of the sufficiency of the plaintiff's petition. The facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs. The court makes no effort to weigh the credibility and persuasiveness of the facts alleged. Rather, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. In order to survive the motion, the petition must invoke

substantive principles of law entitling plaintiff to relief and ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial.

*In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012) (citations and internal quotation marks omitted).

## Analysis

■ The Protection of Lawful Commerce in Arms Act (the "Commerce in Arms Act" or "Act"), 15 U.S.C. §§ 7901–7903, generally prohibits lawsuits against a manufacturer or seller of firearms and related products based on the criminal misuse of such items, unless the suit falls within one of six enumerated exceptions. The Act provides that "[a] qualified civil liability action may not be brought in any Federal or State court," and that qualified civil liability actions pending when the statute was enacted in 2005 "shall be immediately dismissed by the court in which the action was brought or is currently pending." 15 U.S.C. §§ 7902(a), (b). The Commerce in Arms Act "expressly preempts state common law by requiring that state courts immediately dismiss qualified civil liability actions" not falling within a statutory exception. *Est. of Kim v. Coxe*, 295 P.3d 380, 387–88 (Alaska 2013); *see also, e.g., Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131–32 (9th Cir.2009).

The Act defines a "qualified civil liability action" as:

a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include [actions falling within six enumerated exceptions].

15 U.S.C. § 7903(5)(A). A "qualified product" is defined to be "a firearm . . ., or ammunition . . ., or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

The parties do not dispute that the underlying actions fall within the general definition of "qualified civil liability actions": the Gun Shop was a "seller," the magazines and/or ammunition were "qualified products," and Appellants seek both compensatory and punitive damages resulting from Logsdon's criminal misuse of the ammunition and/or magazines. Therefore, dismissal of Appellants' lawsuits was required by the Commerce in Arms Act, unless their claims fall within one of the statutory exceptions.

The Act's definition of a "qualified civil liability action" excludes "an action brought against a seller for negligent entrustment. . . ." 15 U.S.C. § 7903(5)(A)(ii). The Act defines "negligent entrustment" as:

the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B). Appellants rely exclusively on the "negligent entrustment" exception to avoid the Commerce in Arms Act's broad prohibition of qualified civil liability actions.

Although Appellants acknowledge that "these cases are not common law negligent entrustment cases," they nevertheless contend that their claims fall within the Commerce in Arms Act's "negligent

entrustment" exception. The Gun Shop disagrees; it argues that, unless Appellants' causes of action constitute viable claims for "negligent entrustment" under state law, their claims cannot fall within the Act's "negligent entrustment" exception, and the trial court was required to dismiss them.

■ The parties' dispute as to whether Appellants' claims must be denominated as "negligent entrustment" claims under state law is something of a diversion. The Act creates an exception to its broad preemption of firearms-related tort suits for causes of action for "negligent entrustment." The Act specifically defines the "negligent entrustment" claims which may continue to be asserted. While the Act uses the label "negligent entrustment" to denote this category of excepted claims, it could just as easily have used phrases like "exempt action" or "non-preempted claim" to denote the excepted claims, with the same legal effect. The label "negligent entrustment" is less important than the specific description Congress provided of the actions which survive. In other words, a state-law claim may continue to be asserted, even if it is not denominated as a "negligent entrustment" claim under state law, if it falls within the definition of a "negligent entrustment" claim provided in 15 U.S.C. § 7903(5)(B).

■ The allegations of Appellants' amended petitions clearly fall within the Commerce in Arms Act's definition of a "negligent entrustment" claim. The petitions allege that the Gun Shop permitted Logsdon to purchase magazines and/or ammunition using a stolen credit card issued to a female cardholder, and knew or should have known that Logsdon was using Reed's credit card without authorization, and was thereby committing a crime. The petitions further allege that, because the Gun Shop knew or should have known

that Logsdon was making his purchases with a stolen credit card, it knew or should have known that Logsdon was likely to use the purchased articles in a manner involving unreasonable risk of physical injury to others.

Even if the Appellants' allegations fall within the Commerce in Arms Act's "negligent entrustment" exception, however, the question remains: do those allegations state a viable cause of action under the governing substantive law? We conclude that the answer to this question is "no," and that dismissal of Appellants' petitions was therefore required.

■ The Commerce in Arms Act does not itself create a private right of action for claims falling within the "negligent entrustment" exception. The Act specifies only that the broad preemption of "qualified civil liability actions" found in 15 U.S.C. § 7902(a) "shall not include" claims for "negligent entrustment" (as defined). While the Act may exempt "negligent entrustment" claims from mandatory dismissal under federal law, it does not affirmatively authorize or establish such claims—it simply does not extinguish them.

More importantly, the Act expressly provides that "no provision of this Act shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C).

Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how de-

sirable that might be as a policy matter, or how compatible with the statute. *Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (citations omitted). Here, the Commerce in Arms Act's explicit negation of any private right of action is dispositive; Appellants must look to some other source of law to establish a cause of action falling within the Act's "negligent entrustment" exception.

Appellants argue that, even though the Gun Shop is located in Kansas and dealt with Logsdon there, Missouri law should govern their claims.[1] They also admit that Missouri does not recognize a negligent entrustment claim against a product seller, and therefore that they cannot assert a negligent entrustment claim under Missouri law.[2] Appellants' concession that Missouri negligent entrustment claims do not extend to product sellers appears to be consistent with current caselaw. *See, e.g., Sansonetti v. City of St. Joseph*, 976 S.W.2d 572, 578–79 (Mo.App.W.D.1998) (negligent entrustment theory not applicable where, even if vehicle sale not technically completed at time of injury-causing accident, "[b]oth [seller] and [buyer] intended there be a sale, and the car was permanently relinquished to [buyer]"); *Fluker v. Lynch*, 938 S.W.2d 659, 662 (Mo. App.W.D.1997) (dealership not liable under negligent entrustment theory for accident occurring the day after a vehicle sale, despite the fact that the buyer appeared to be intoxicated at the time of the sale and the transaction was arguably not yet complete).[3] Missouri courts refuse to recog-

1. An argument could be made that Kansas law should be applied to determine the Gun Shop's liability, even if Missouri law applied to damages issues, because the Gun Shop's allegedly negligent conduct occurred in Kansas. *See, e.g., Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 395–99 (Mo.App.W.D.2013); *Livingston v. Baxter Health Care Corp.*, 313 S.W.3d 717, 722–24 (Mo.App.W.D.2010); *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 442–45 (Mo.App.W.D.1986). Generally, however, Missouri law will be applied unless a party properly invokes the laws of another State. *Cub Cadet Corp. v. Mopec, Inc.*, 78 S.W.3d 205, 210 (Mo.App.W.D.2002); *Cohen v. Ozark Airlines, Inc.*, 623 S.W.2d 84, 86–87 (Mo.App.E.D.1981); *Aman Collection Serv., Inc. v. Burgess*, 612 S.W.2d 405, 408 n. 1 (Mo.App.W.D.1981). In this case, Appellants have affirmatively argued that Missouri law should be applied.

2. In their Opening Brief, Appellants argue that
> [u]nder the common law definition, a negligent entrustment case requires the entrustment of a chattel to someone where the entrustor retains the ultimate right of control over the chattel. That is why, as Respondent has pointed out, Missouri does not recognize a cause of action for negligent entrustment where there is a sale of a chattel and the seller relinquishes control.

Opening Br. at 23–24 (citation omitted). In their Reply Brief, Appellants assert that they "long ago conceded" "that Missouri does not recognize a cause of action for negligent entrustment in the sale of a chattel." Reply Br. at 4.

3. A law-review article suggests that, in *Fowler v. Park Corp.*, 673 S.W.2d 749 (Mo. banc 1984), "Missouri ... recognized a new common law cause of action against merchants," under which "a sale or lease of goods to a customer who the merchant knows or should know is inexperienced or incompetent establishes a prima facie case of negligence against the merchant in favor of third parties injured through the customer's use of the product." Robert M. Howard, *The Negligent Commercial Transaction Tort: Imposing Common Law Liability on Merchants for Sales and Leases to "Defective" Customers*, 1988 DUKE L.J. 755, 771 (footnotes omitted). *Fowler* does not stand for the broad proposition this article attributes to it, however. *Fowler* did not involve a sale of a product by a merchant; instead, it involved the informal loaning of a piece of railroad equipment by a parent company to its subsidiary, which resulted in an injury to one of the subsidiary's employees. *See* 673 S.W.2d at 751, 753.

nize negligent entrustment claims against product sellers because, to establish negligent entrustment, a plaintiff must establish that the entrustor's "right of control over the [entrusted article] was superior to [the entrustee's] right of control." *Hays v. Royer*, 384 S.W.3d 330, 337 (Mo.App. W.D.2012). That "superior control" cannot be established in the case of a product *sale*, because in a sale transaction the seller relinquishes all control over the product.

 Rather than relying on Missouri's negligent-entrustment doctrine, Appellants argue that this Court should recognize a claim against the Gun Shop based on general negligence principles, for its "negligent sale" of the ammunition and/or magazines to Logsdon. We refuse to recognize such a novel claim, for two principal reasons. First, Appellants' claim asserts that the Gun Shop negligently gave Logsdon possession of a non-defective article or articles, in circumstances in which the Gun Shop should have been aware that Logsdon was likely to use those articles in an unintended and unauthorized manner which could cause harm to others. This claim is most naturally understood as a negligent entrustment claim. Yet Appellants admit that they cannot assert a negligent entrustment claim against the Gun Shop under current Missouri law, because Missouri law holds that a seller of chattels cannot be held liable for negligent entrustment. Appellants do not argue for a modification of that existing law. In these circumstances, we will not permit them to evade the limitations on Missouri's negli-

gent-entrustment doctrine, under the guise of asserting a "general negligence claim." [4]

The most recent RESTATEMENT OF THE LAW applicable to personal-injury claims explains that, while all persons are subject to a duty to exercise reasonable care to avoiding harming others, that generalized duty is inapplicable in specific contexts where the courts have determined that no duty should apply:

[A]ctors engaging in conduct that creates risks to others have a duty to exercise reasonable care to avoid causing physical harm. In most cases, courts can rely directly on [this principle] and need not refer to duty on a case-by-case basis. Nevertheless, in some categories of cases, reasons of principle or policy dictate that liability should not be imposed. In these cases, courts use the rubric of duty to apply general categorical rules withholding liability. For example, a number of modern cases involve efforts to impose liability on social hosts for serving alcohol to their guests. A jury might plausibly find the social host negligent in providing alcohol to a guest who will depart in an automobile. Nevertheless, imposing liability is potentially problematic because of its impact on a substantial slice of social relations. Courts appropriately address whether such liability should be permitted as a matter of duty. . . .

. . . .

A no-duty ruling represents a determination, a purely legal question, that no liability should be imposed on actors in a category of cases. Such a ruling should

---

4. *See Virgin v. Hopewell Center*, 66 S.W.3d 21, 27 (Mo.App.E.D.2001) (where caselaw had previously refused to impose liability on mental-health professionals for injuries caused by recently released patients except in limited circumstances, court refused to apply general negligence principles to find a duty, since "Missouri case law has already decided the specific allegation of duty alleged in the case *sub judice*, and held that it does not exist"); *cf. Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 549 (Mo.App.E.D.2006) ("The doctrine of prima facie tort cannot be utilized to avoid an inability to prove one element of a nominate tort that is otherwise applicable under the facts.").

be explained and justified based on articulated policies or principles that justify exempting these actors from liability or modifying the ordinary duty of reasonable care. These reasons of policy and principle do not depend on the foreseeability of harm based on the specific facts of a case. They should be articulated directly without obscuring references to foreseeability.

RESTATEMENT (3D) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 7, comments a, j (2010). Although Appellants argue that the foreseeable risk of harm presented by the Gun Shop's sale of firearm-related products justifies imposing a duty on it to avoid such harm under general negligence principles, that argument is foreclosed by the Missouri caselaw addressing this specific situation, which refuse to hold product sellers liable for negligent entrustment.

In addition, Appellants cite no case in which a Missouri court has recognized a cause of action against the seller of a nondefective, lawful product, for injuries caused by the unlawful use of that product by a third party, away from the seller's premises. Appellants argue that their cases are "analogous to dram shop cases where an action may be brought against a bar owner if the bar owner serves alcohol to an underage or visibly intoxicated person, where the bar owner knew or should have known of the same and the patron leaves the bar and causes personal injury or death to a third person." Opening Br. at 24. There are several problems with this argument, however. First, Missouri's recognition of common-law dram shop liability has a checkered history. Although this Court recognized a cause of action against a tavern owner for injuries caused

by an intoxicated patron under general negligence principles in *Carver v. Schafer*, 647 S.W.2d 570, 575 (Mo.App.E.D.1983), the General Assembly responded by enacting what is now § 537.053, RSMo Cum. Supp.2012.[5] While that statute recognizes a cause of action against persons licensed to sell liquor by the drink in defined circumstances, *see* § 537.053.2, it also declares that,

[s]ince the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

§ 537.053.1. Thus, the dram-shop liability currently recognized in Missouri is purely statutory, and has no application here.

Moreover, even if dram-shop liability is founded in common-law principles of wider applicability, dram-shop liability is imposed only on persons "licensed to sell intoxicating liquor by the drink for consumption on the premises." § 537.053.2, RSMo Cum.Supp.2012. The Gun Shop did not sell any articles to Logsdon for his use on the premises. Instead, the Gun Shop allegedly sold Logsdon ammunition and/or magazines for his use at a future time, at some other location. The Gun Shop's conduct was not analogous to the sale of liquor "for consumption on the premises." Dram-shop liability is imposed in circumstances in which a tavern operator has an opportunity to observe a patron's behavior, including their liquor consumption, and can refuse to serve the patron, or take other

5. The history of Missouri's dram shop statutes is complicated: the original 1985 enactment was declared unconstitutional in 2001, and the present version enacted in 2002. *See generally Coons v. Berry*, 304 S.W.3d 215, 218–21 (Mo.App.W.D.2009).

action, if the patron shows signs of intoxication. A tavern owner maintains significant oversight and control over patrons' use of the liquor the tavern owner sells. The Gun Shop had no similar opportunity to observe or control Logsdon's actions.

If anything, the Gun Shop is in a comparable position to the seller of *packaged* liquor, sold for consumption off the seller's premises. Like packaged liquor, the products the Gun Shop sold to Logsdon could be used at a time and location, and in a manner, of Logsdon's choosing, with no input from, or oversight by, the Gun Shop. Notably, despite the recognition of dramshop liability in certain circumstances, to our knowledge Missouri has never imposed liability on packaged liquor sellers for the actions taken by persons who become intoxicated by consuming the purchased liquor away from the seller's premises.[6]

In *Snodgras v. Martin & Bayley, Inc.*, 204 S.W.3d 638 (Mo. banc 2006), the Missouri Supreme Court held that the dramshop statute's denial of a cause of action against sellers of packaged liquor, while permitting a cause of action against purveyors of liquor by the drink, did not violate equal protection. *Snodgras* explains that the legislature could rationally distinguish between sellers of liquor-by-the-drink and sellers of packaged liquor:

> There are several rational bases for barring suits against sellers of packaged liquor for consumption off the premises. First, unlike the proprietor of a bar or tavern, the seller of packaged liquor is dealing with a single transaction and has less opportunity to observe customers and make judgments about whether they are intoxicated or of age. At a bar or tavern, patrons consume intoxicants on the premises and in the presence of the vendor or its employees. It is, therefore, not irrational for the legislature to assign additional responsibility to those who sell liquor by the drink for consumption on the premises.
>
> Second, in defining the scope of liability under the Act, the legislature can consider the degree of complexity and certainty in claims against sellers of packaged alcohol relative to sellers of liquor by the drink.... [T]he issues of causation, foreseeability, and breach of duty are more complex and less certain if the liquor is sold by the package for consumption off the premises. Sellers of packaged liquor have no control over their patrons once they leave the premises. The legislature could have reasonably concluded that allowing for liability in that context would involve unacceptable amounts of uncertainty given the variety of possible intervening factors between the times of purchase, consumption, and injury.

*Id.* at 641 (citation omitted).

We recognize that *Snodgras* addressed a fundamentally different issue than the one we face here. Nevertheless, it points up the significant distinctions between sellers of products which are used in the seller's

---

6. *See Childress v. Sams*, 736 S.W.2d 48, 50 (Mo. banc 1987) ("a commercial vendor selling [liquor] in original package for consumption off the premises" not liable for injuries caused by individual who became intoxicated by consuming the liquor sold); *Lambing v. The Southland Corp.*, 739 S.W.2d 717, 719–20 (Mo. banc 1987) (refusing to impose liability on operator of retail store which sold packaged liquor to intoxicated patron); *Gabelsberger v. J.H.*, 133 S.W.3d 181, 185–86 (Mo.App. W.D.2004) (refusing to recognize liability of adult who "received money from the minors for the purpose of purchasing alcoholic beverages for the minors knowing that they would consume the beverage to become intoxicated and that the driving ability of each would become impaired thereby"); *Leimkuehler v. Myers*, 780 S.W.2d 653, 655 (Mo.App.W.D. 1989); *Trammell v. Mathis*, 744 S.W.2d 474, 475 (Mo.App.W.D.1987); *Ernst v. Dowdy*, 739 S.W.2d 571, 572–73 (Mo.App.E.D.1987).

presence, and sellers of products which are intended for use off-premises. *Snodgras* confirms that Appellants cannot rely on the principles underlying the dram-shop liability statute to seek to impose liability on the Gun Shop in the very different circumstances of this case. Moreover, the fact that Missouri courts have refused to impose liability on packaged-liquor sellers reinforces the fact that, as a general proposition, liability is not imposed on sellers of non-defective, lawful products, for injuries caused by the misuse of those products by the purchaser or other persons. Our independent research has not discovered a single Missouri case in which liability was imposed on the retail seller of a non-defective lawful product, for injuries resulting from the misuse of that product away from the seller's establishment.[7]

At oral argument, Appellants contended that the ammunition and/or magazines the Gun Shop sold were designed solely to cause significant human injuries; if that were true, the articles the Gun Shop sold could arguably be considered defective in their intended use. We must respectfully disagree with Appellants' characterization, however. Although firearms are plainly susceptible to unlawful use which can cause severe injuries (as this case tragically illustrates), the sale of firearms and related products is legal, and those products are capable of being safely used for many lawful purposes, including security and self-defense, as well as in various sporting and recreational activities. The Gun Shop did not sell Logsdon an unlawful or defective product or products.

We sympathize with Appellants' loss of their children, who were the innocent victims of a brutal murderer. We are nevertheless constrained to hold that, under current Missouri law, Appellants cannot state a cause of action against the Gun Shop based on its sale of non-defective, legal ammunition and/or magazines, for injuries caused by David Logsdon's senseless and unlawful actions. Therefore, even though their claims may not have been precluded by the Protection of Lawful Commerce in Arms Act, Appellants have failed to allege a viable cause of action under Missouri law. The circuit court did not err in dismissing their claims.

## Conclusion

The circuit court's judgments are affirmed.

All concur.

---

7. In *Tharp v. Monsees*, 327 S.W.2d 889 (Mo. banc 1959), the court reversed the judgment against a service station for injuries suffered by a 12–year–old boy who was injured when he and a friend set fire to gasoline the injured boy had purchased at the station. Although the Court found the evidence insufficient to establish the service station's liability on the facts before it, *see id.* at 897–98, it also held that the misuse of the gasoline by the injured boy and his friend was the sole proximate cause of the injuries. *Id.* at 898. We do not read *Tharp* as establishing a cause of action against retail sellers in such circumstances, even though the Court's discussion of the sufficiency of the evidence arguably assumed that such a theory could be viable. In *Bosserman v. Smith*, 205 Mo.App. 657, 226 S.W. 608 (1920), the Court of Appeals affirmed a jury verdict for a young boy who was injured by fireworks purchased from the defendant. However, in *Bosserman*, the fireworks the child purchased were dangerous even for their intended use; moreover, the evidence indicated that the retail seller, intentionally or unintentionally, misrepresented to the boy that the fireworks sold to him were another, non-dangerous variety. *Id.* at 608–09. The facts of *Bosserman* are plainly distinguishable from this case. Neither *Tharp* nor *Bosserman* was cited by the parties.