**John HALLQUIST, Appellant,**

v.

**Robert SMITH and Susan Smith, Respondents.**

No. ED 86372.

Missouri Court of Appeals, Eastern District, Division One.

March 7, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 25, 2006.

---

**5.** The city apparently does not contest the award or amount of attorney's fees.

———

James M. Dowd, St. Louis, MO, for appellant.

Lawrence F. Hartstein, Clayton, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

John Hallquist appeals from a judgment of the Circuit Court of St. Louis County which granted summary judgment in favor of Robert and Susan Smith in a personal injury action stemming from a vehicle collision involving Hallquist and Nathan Smith, the Smiths' son. In his appeal, Hallquist asserts that the trial court erred when it entered summary judgment in favor of the Smiths with regard to Hallquist's claims for negligent entrustment and negligent supervision. We affirm in part and reverse and remand in part.

### Background

On the evening of March 14, 2003, 18 year-old Nathan Smith attended a party with his friends where he drank alcohol and used drugs. The Smiths were aware that when Nathan used drugs or alcohol he was typically out of the house and with friends. The Smiths also knew that Nathan had a history of driving after using alcohol and/or marijuana. After the party, Nathan's friend drove Nathan to his home which he shared with his parents. Nathan's parents did not hear him come into the house, because after attending a party themselves, they were asleep.

Once at home, Nathan took the keys to his mother's Toyota 4Runner which were laying on the kitchen counter and drove away from his home. At approximately 1:30 a.m., on March 15, 2003, Nathan drove the 4Runner into a stopped patrol car occupied by Hallquist, a St. Louis County police officer. The collision knocked Hallquist unconscious, caused a closed-head injury, post-concussive syndrome, hearing loss, tinnitus, severe headaches and tooth loss.

At the time of his collision with Hallquist's patrol car, Nathan had a BAC of .22 and was in possession and under the influence of marijuana. Although Nathan did not recall anything about the crash, he did recall drinking alcohol, riding as a passenger in the backseat of his friend's car after the party, being dropped off at the Smiths' home and awaking in the hospital after the collision. The officer who transported Nathan from the hospital to the police station informed Nathan that he had crashed his car into the back of a police car.

Although the Smiths previously purchased cars for Nathan, at the time of the accident, Nathan was no longer in possession of an automobile. Instead, the Smiths occasionally granted Nathan permission to drive their 4Runner to complete errands for his mother. Both Nathan and the Smiths claim that, on the night of his collision with Hallquist, Nathan did not have permission to drive the 4Runner.

Following the accident, Hallquist brought suit against Nathan for negligence and against the Smiths for negligent entrustment and negligent supervision. The Smiths filed a Motion for Summary Judgment and Statement of Facts in support thereof. In their motion, the Smiths alleged that they did not negligently entrust the 4Runner to Nathan because he: (1) did not have unfettered permission to operate the 4Runner; (2) drove the 4Runner infrequently and never without express permission; (3) drove the 4Runner only to complete errands for his mother and never for his own pleasure; and (4) did not have permission to operate the 4Runner on March 14 or 15, 2003. In response to the negligent supervision claim, the Smiths alleged that they no longer had a legal duty to supervise Nathan because, at the time of the accident, he was 18 years-old and no longer a minor.[1]

Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment and alleged that there remained a genuine issue of material fact as to whether the Smiths entrusted the 4Runner to Nathan and whether the parents of an unemancipated 18 year-old can be liable for negligent supervision.

The court called and heard the Smiths' Motion for Summary Judgment. On April 18, 2005, the court entered its Order granting the Smiths' Motion for Summary Judgment. This appeal followed.

### Standard of Review

Our review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine

issues of material fact exist. *Id.* at 377. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. We view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

### Discussion

### I. Negligent Entrustment

In his first point on appeal, Hallquist asserts that the trial court erred when it granted the Smiths' Motion for Summary Judgment because he adduced evidence that: (1) Nathan had permission to drive the Smiths' vehicles from time to time; (2) despite their knowledge of Nathan's history of driving while intoxicated, the Smiths left the keys to the 4Runner accessible; and (3) the Smiths failed to enforce a curfew which would have prevented this accident. In response, the Smiths assert that because Nathan did not have express permission to drive the 4Runner on the night of the accident, they negated the essential element of "entrustment."

The requisite elements of a claim for negligent entrustment are: (1) the entrustee was incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the

---

1. The parties dismissed by stipulation the claims against Nathan.

entrustee to cause the plaintiff's injuries. *See Evans v. Allen Auto Rental & Truck Leasing Co.*, 555 S.W.2d 325, 326 (Mo. 1977). To establish their right to summary judgment, the Smiths were required to negate at least one of the requisite elements of a claim for negligent entrustment. *ITT*, 854 S.W.2d at 381. To that end, the Smiths attacked the third element of Hallquist's negligent entrustment claim, i.e., proof that the Smiths entrusted their 4Runner to Nathan.

The Smiths assert that although they gave Nathan permission to drive the 4Runner from time to time, he did not have express permission to drive the 4Runner on the night of the accident. Hallquist responds that there remains a genuine issue of material fact as to whether the Smiths entrusted Nathan with the 4Runner on the night of the accident.

The recent case of *LeCave v. Hardy*, 73 S.W.3d 637 (Mo.App. E.D.2002) provides us with guidance here. In *LeCave*, a 21 year-old with a history of automobile related convictions took a car from his father's house, where he still lived. Although the father knew that his son had a tumultuous driving record and did not have a car or car insurance, the father customarily allowed his son to borrow a car and, on the night of the accident, left the keys to one of his cars in its ignition. The son took his father's car, without express permission, and caused a fatal accident. Following the accident, the victim's family sued the son for negligence and the father for negligent entrustment. In response, the father moved for summary judgment based, in part, on the fact that the father expressly denied the son permission to take his car on the night of the accident. The trial court granted summary judgment in favor of the father and the victim's family appealed. *Id.* at 640.

On appeal we addressed whether the father entrusted his car to his son. In resolving the issue, we held that "entrustment may be proven by either express or implied permission."[2] *LeCave*, 73 S.W.3d at 645. In *LeCave*, the father and his son both testified that father expressly denied his son permission to take the car on the night of the accident. In light of his allegation that he expressly denied his son permission, the father in *LeCave* argued that it was impossible for the victim's family to prove entrustment. We held that despite father and son's assertions regarding an express denial of permission to drive the car and the fact that the victim failed to offer direct evidence to rebut this testimony, the indirect evidence and reasonable inferences therefrom were sufficient for a jury to disbelieve that the father expressly denied the son permission

---

2. The *LeCave* opinion also contains language which seemingly contradicts this well-established principle. Citing a dissenting opinion in *Trobaugh v. Farmers Insurance Exchange*, 623 N.W.2d 497, 507 (S.D.2001), the *LeCave* court stated that "if the owner has expressly denied a third party permission to drive, then implied permission is not analyzed." 73 S.W.3d at 645. However, close review of the *Trobaugh* dissent reveals that this concept was developed in the context of analysis of an insurance coverage dispute (one of the issues in *Trobaugh*) rather than a negligent entrustment claim and is of questionable applicability here. Indeed, the Texas case relied on by the *Trobaugh* dissent for this proposition specifically declined to discuss the relationship between express and implied permission in a negligent entrustment context, noting "negligent entrustment ... is not before us in this case." *Tristan v. Government Employees Ins. Co.*, 489 S.W.2d 365, 368 (Tex.Ct.App.1972). Importantly, the majority in *Trobaugh* reversed a summary judgment in favor of a vehicle owner on the basis that although there was evidence of an express denial of permission, "there [was] a material question of fact as to whether [the owner] gave implied permission to [the driver] to drive the vehicle." 623 N.W.2d at 504.

to use the car on the night of the accident. *Id.* at 645.

In essence, we rejected the notion that the Smiths appear to be advancing here, that simply because a parent asserts that he expressly denied his son permission to use his car on the night of the accident, summary judgment is thereby mandated. To the contrary, *LeCave* teaches that despite an assertion of express denial, a court should consider evidence of the parent and child's past history with respect to the vehicle in question, including previous authorization to drive the parent's vehicle.

In *LeCave*, we also analyzed whether the evidence could support a finding that the parent gave implied permission to his son to drive the parent's car. We held that a finding of implied permission may be based on a pattern of conduct, the relationship of the parties or a lack of objection that indicates consent. *Id.* at 646. Moreover, where "the relationship is one of blood, weaker evidence will support a finding of" implied permission. *Id.*

In *LeCave*, the plaintiff adduced evidence that the father allowed his son to use the father's cars despite knowledge of his son's poor driving record and consequent uninsured status. As in *LeCave*, here there was undisputed evidence establishing that despite Nathan's driving history, the Smiths allowed him to use the 4Runner. In addition, the *LeCave* parent allowed his son access to the car's ignition keys on the night on the accident. As the court in *LeCave* stated, "if [father] was serious about preventing [son] from driving [his car], [father] could have simply removed the keys from the ignition. The failure to do so raises an inference of implied consent." *Id.* Likewise, here, if the Smiths were serious about preventing their son from driving the 4Runner they should have removed the ignition keys from the kitchen counter and secured them.

In both *LeCave* and here, the parents had repeatedly allowed the child to drive the vehicle in the past and did nothing to prevent the child from gaining access to the vehicle on the night in question. In addition, as in *LeCave*, here the parent was well aware of the dangerous proclivities of the child with respect to driving. Accordingly, as in *LeCave*, Hallquist has raised an inference of implied permission sufficient to defeat summary judgment. Point granted.

## II. Negligent Supervision

■ In his second point on appeal, Hallquist asserts that the trial court erred when it granted summary judgment in favor of the Smiths on Hallquist's negligent supervision claim. Hallquist specifically contends that the trial court's finding that the Smiths did not have a duty to supervise Nathan once he turned 18 years-old is a misstatement and misapplication of Missouri law.

To prevail on his negligent supervision claim, Hallquist needed to plead and prove each of the following facts: (1) the Smiths had a legal duty to use ordinary care to protect others against unreasonable risks of harm; (2) the Smiths breached that duty; (3) the breach of duty was the proximate cause of the resulting injuries; and (4) Hallquist suffered actual damages to his person or property. *See G.E.T. ex rel. T.T. v. Barron*, 4 S.W.3d 622, 624 (Mo.App. E.D.1999). Again, because the Smiths did not bear the burden of persuasion at trial, they could establish their right to summary judgment by showing that the facts of the case negate any one of the above elements. *See ITT*, 854 S.W.2d at 381.

■ In this, as in any negligence case, Hallquist, as the plaintiff, had to first establish the existence of a duty on the part of the defendants. *See Newcomb v. St. Louis Office for Mental Retardation and Developmental Disabilities Resources*, 871

178

S.W.2d 71, 73 (Mo.App. E.D.1994). A legal duty arises where: (1) imposed by the legislative branch; (2) imposed by the law based on a relationship between the parties or because the defendant must exercise due care to avoid a foreseeable injury because of a particular set of circumstances; or (3) a party assumed a duty. *Lumbermens Mutual Casualty v. Thornton*, 92 S.W.3d 259, 263 (Mo.App. W.D. 2002). In the case at bar, the Smiths contend they had no legal duty with regard to Nathan's allegedly tortious behavior because: (1) Nathan had achieved the age of majority; and (2) Missouri does not recognize a claim against parents for the negligent supervision of an adult child.

Although Hallquist asserts that "under Missouri domestic relations law, the Smiths' duties clearly go beyond Nathan's 18th birthday," he does not cite any case law that supports his contention that parents can be liable for wrongful acts committed by adult children. Instead, Hallquist cites to two child support cases, *Sparks v. Trantham*, 814 S.W.2d 621 (Mo. App. S.D.1991) and *In re the Marriage of Pender*, 593 S.W.2d 230 (Mo.App. E.D. 1979), and appears to ask this court to extend their rationales to the area of tort law. Under the facts present here, we decline to extend *Sparks* and *Pender* in order to create a new cause of action for negligent supervision. Point denied.

### Conclusion

The judgment of the trial court is affirmed in part and reversed and remanded in part.

MARY K. HOFF, P.J., Concurs.

CLIFFORD H. AHRENS, J., Concurs in part and Dissents in part in a separate opinion.

CLIFFORD H. AHRENS, Judge.

I respectfully dissent from the portion of the majority opinion which holds that Hallquist raised an inference of implied permission sufficient to defeat summary judgment on Hallquist's negligent entrustment claim. The majority relies on *LeCave v. Hardy*, 73 S.W.3d 637 (Mo.App.2002) in its decision; however, the facts of the present case are clearly distinguishable from those in *LeCave*.

As the majority notes, the court in *LeCave* considered whether a trial court's grant of summary judgment in favor of a father on a negligent entrustment claim was proper. In *LeCave*, as in the present case, both father and son testified that father had expressly denied son permission to use the vehicle involved in the accident. 73 S.W.3d at 645. However, in *LeCave*, this court determined that the testimony was not enough to warrant summary judgment because there was evidence from which a jury could believe son was given implied permission to drive the vehicle involved in the accident. *Id.* at 646. The court noted evidence of son's customary use of his father's vehicle to get to and from work and school. The court also noted that father left the keys to the vehicle in the ignition. The court concluded that father knew son would likely need to use the vehicle to get to and from work and school, and if father was serious about preventing son from driving the vehicle, he would have removed the keys from the ignition. *Id.* Based upon these facts, this court determined that sufficient facts were presented to preclude summary judgment. *Id.*

The facts of the present case are distinguishable from those in *LeCave*. Here, both Susan and Nathan Smith testified that Nathan was not allowed to use the 4Runner. Susan stated that if Nathan did drive the vehicle, it was when she "might" have specifically asked him to do so to run limited errands for the household, but she did not allow him to use the vehicle for any

other purpose. Additionally, Nathan testified that he was not allowed to drive the 4Runner. He only testified to driving the vehicle on one occasion when he drove it to have it washed.

The majority relies upon *LeCave* to conclude that there was sufficient evidence of implied consent in the present case to defeat summary judgment. The majority notes that similar to *LeCave*, the Smiths "repeatedly" allowed Nathan to drive the vehicle in the past, despite his driving history. However, the summary judgment facts show that Nathan did not have permission to drive the vehicle, he was aware of this fact, and he only drove the vehicle when specifically asked to do so by his mother to use it for very limited purposes. Thus, the majority's conclusions are not supported by the summary judgment record.

Moreover, I disagree with the majority's conclusion that as in *LeCave*, the Smiths should have secured the keys to the vehicle if they were serious about preventing Nathan from driving. The facts in *LeCave* are distinguishable. In *LeCave*, father left the keys in the ignition in a vehicle his son "customarily" drove to and from school. This court did not solely point to the fact that father left the keys in the ignition as sufficient evidence to raise an inference of implied consent. Instead, the court also noted that father knew his son would need to drive the vehicle to get to and from work and school, and father should have removed the keys from the ignition. 73 S.W.3d at 646. The court concluded that the failure of father to do so raises an inference of implied consent. *Id.*

In the present case, there was no such customary use. The summary judgment facts show that Nathan was not allowed to drive the 4Runner. There was no showing that Nathan would need to use the 4Runner to get to and from work or school. In fact, Nathan testified that he obtained rides to work and school from friends. Additionally, here, the keys were not left in the ignition of the vehicle, as they were in *LeCave*. Instead, they were left in the Smith's kitchen. Nathan was expressly denied permission to drive the vehicle. He did not customarily drive the 4Runner, and if Nathan did drive the 4Runner it was when his mother specifically asked him to do so for a limited purpose. In light of these facts, the fact that Robert Smith left his keys in his kitchen instead of under lock and key does not support an inference of implied consent to use the vehicle.

The summary judgment facts in the instant case negate the requisite element of entrustment. Accordingly, I would affirm the grant of summary judgment on the negligent entrustment claim. I concur with the majority opinion in affirming summary judgment in favor of the Smiths on Hallquist's negligent supervision claim.