**SAFECO INSURANCE COMPANY OF AMERICA, Respondent,**

v.

**Sherri Lee SMITH, et al., Appellant.**

**No. WD 71356.**

Missouri Court of Appeals, Western District.

June 1, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2010.

Application for Transfer Denied Sept. 21, 2010.

Phillip A. Burdick, for Appellant.

Timothy J. Wolf, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and ZEL M. FISCHER, Special Judge.

JOSEPH M. ELLIS, Judge.

Thomas Allen Smith and Sherri Lee Smith ("the Smiths") appeal from a summary judgment entered by the Circuit Court of Buchanan County in favor of Safeco Insurance Company in a declaratory judgment action filed by Safeco seeking a declaration that an insurance policy it issued does not provide coverage for Clint Smith with respect to a fatal accident that killed the Smith's son, A.J. Smith.[1] For the following reason, the judgment is reversed, and the cause is remanded for further proceedings.

On the evening of December 31, 2001, Eric Cox and A.J.[2] were spending the night at Clint's home, which is owned by his parents, Billy and Theresa Smith. Eric had driven to the Smith house in his 1991 Dodge Dakota pickup truck. After they had been drinking beer in the garage for a while, at about 10 p.m., despite the fact that Clint was fifteen years old and did not have a driver's license or learner's permit, Eric had Clint drive Eric and A.J. in Eric's truck to a friend's house to watch movies because he was the most sober of the group. About 11:30 p.m., Clint drove the group back to his house.

After Eric had fallen asleep, at about midnight, Clint drove himself and A.J. to a truck stop in Eric's truck. Later, at about 1:15 a.m., a short distance from Clint's home on Taos Road, Clint lost control of the truck and drove into a ravine with the truck flipping over several times. A.J. was thrown from the vehicle and sustained internal injuries that ultimately proved to be fatal.

On August 25, 2005, the Smiths, A.J.'s parents, filed a wrongful death action against Clint, Eric, Clint's parents, and Eric's parents in the Circuit Court of Buchanan County on behalf of A.J. They alleged that Clint had been negligent in the operation of Eric's truck resulting in fatal injuries that caused A.J.'s death. The Smiths also claimed that Eric had negligently driven the truck because both Eric and Clint maintained that they were not in the truck at the time of the accident. The Smiths claimed that Eric's parents had negligently entrusted the truck to Eric and Clint and that Clint's parents were negligent in failing to supervise Eric and Clint on the night of the accident.

At the time of the accident, Clint was covered by an automobile insurance policy issued to his parents by Safeco. Safeco denied coverage for the accident and refused to provide him with a defense.

On November 29, 2006, Clint entered into a settlement agreement with the Smiths under § 537.065. Pursuant to that agreement, a consent judgment for $100,000 was entered in favor of each of the Smiths in exchange for the Smiths' agreement to seek satisfaction of their judgments only from any insurance coverage Clint might have under the Safeco policy.

On April 7, 2007, Safeco filed a petition for declaratory judgment seeking a declaration that its policy did not cover Clint with respect to the judgments obtained by the Smiths. Safeco claimed that no coverage existed because Clint was not driving the truck or, in the alternative, that an exclusion precluded coverage because Clint could not have been operating the truck with a reasonable belief that he had per-

---

1. The two Smith families involved in this incident are not related.

2. Because many of the people referred to in this case share the same last name, we refer to several of them by their first name to prevent possible confusion. In so doing, we intend no disrespect.

mission to do so because he was fifteen years old and did not have a driver's license. The Smiths later filed a counterclaim for equitable garnishment against Safeco seeking satisfaction of their judgments against Clint.

Safeco eventually filed a motion for summary judgment which the Smiths opposed. Safeco asserted that Clint and Eric's deposition testimony conclusively established that Clint did not have permission to drive the truck and could not have reasonably thought he had such permission and that he was, therefore, not covered by the policy. After the matter was argued, on July 23, 2009, the circuit court entered summary judgment in favor of Safeco.

On appeal, the Smiths claim that the motion court erred in granting summary judgment because an issue of material fact remained as to whether Clint could have reasonably believed he had permission to use the truck. The Smiths contend that Clint and Eric's testimony could be found not credible and that substantial evidence supported a finding that he had implied permission to drive the truck.

Because the trial court makes its decision to grant summary judgment based upon the record submitted and the law, this court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo. Crow v. Kansas City Power & Light Co.,* 174 S.W.3d 523, 533 (Mo.App. W.D.2005). In so doing, we apply the same criteria as the trial court to determine whether summary judgment was properly entered. *Bauer v. Farmers Ins. Co.,* 270 S.W.3d 491, 494 (Mo.App. W.D.2008). Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* "[A] 'genuine issue' exists where the record contains competent ma-

terials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993). "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Hammack v. Coffelt Land Title, Inc.,* 284 S.W.3d 175, 177–78 (Mo.App. W.D.2009). "However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 178 (internal quotation omitted).

"In general, an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Haulers Ins. Co. v. Pounds,* 272 S.W.3d 902, 905 (Mo.App. S.D.2008) (internal quotation omitted). "Where an insurer seeks to deny coverage based on a policy exclusion, the burden of establishing that the exclusion applies lies with the insurer." *Id.*

The insurance policy at issue excludes coverage for any insured "[u]sing a vehicle without a reasonable belief that [he or she] has permission to do so." This exclusion is unambiguous. *See Marchand ex rel. Marchand v. Safeco Ins. Co.,* 2 S.W.3d 826, 829–30 (Mo.App. E.D.1999).

In its motion for summary judgment, Safeco claimed that the undisputed facts established that Clint did not believe and could not have reasonably believed that he had permission to drive the truck after Eric went to sleep. Safeco relied upon deposition testimony from Clint stating that he did not drive the truck after Eric went to sleep and did not believe he had permission to do so and Eric's testimony

that he did not give Clint permission to drive the truck without him. Safeco claimed this testimony must be accepted as credible and is conclusive and unassailable on the issue of whether Clint subjectively believed that he had permission to drive the truck.

■ "The issue of permissive use of an automobile is a question of fact. . . ." *Nautilus Ins. Co. v. I–70 Used Cars, Inc.*, 154 S.W.3d 521, 528 (Mo.App. W.D.2005) (internal quotation omitted). While the Smiths do not, and cannot, offer direct evidence contradicting Clint's and Eric's testimony, contrary to Safeco's assertions, the credibility of this deposition testimony may be challenged through indirect evidence and reasonable inferences drawn therefrom. *LeCave v. Hardy*, 73 S.W.3d 637, 645 (Mo.App. E.D.2002) (rejecting assertion that deposition testimony of parent and child denying that child had permission to use the vehicle was conclusive of the issue of permission for purposes of summary judgment); *Hallquist v. Smith*, 189 S.W.3d 173, 176–77 (Mo.App. E.D. 2006) (rejecting argument that deposition testimony that permission was expressly denied mandated summary judgment). If the evidence would support an inference of implied permission, summary judgment should be denied. *Hallquist*, 189 S.W.3d at 176–77.

■ "Implied permission is permission that is not verbally expressed, but provable by circumstantial evidence." *Nautilus Ins. Co.*, 154 S.W.3d at 529 (internal quotation omitted). "Implied permission is determined from the facts and circumstances of the case and usually arises from a course of conduct of the parties over a period of time." *Id.* (internal quotation omitted). "Permission can be derived from negative, as well as positive, factors." *Universal Underwriters Ins. Co. v. Michael*, 781 S.W.2d 119, 123

(Mo.App. W.D.1989). "[A] finding of implied permission may be based on a pattern of conduct, the relationship of the parties or a lack of objection that indicates consent." *Hallquist*, 189 S.W.3d at 177. "Implied permission may be the result of a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile." *Nautilus Ins. Co.*, 154 S.W.3d at 529 (internal quotation omitted). "[T]he absence of an explicit restriction on the use of an automobile is a strong indication that such use is permissible." *Michael*, 781 S.W.2d at 123.

Within the deposition testimony and evidence presented in opposition to the motion for summary judgment, there is evidence that Eric had allowed Clint to use his truck on multiple occasions with and without him present. This testimony directly contradict's Eric's testimony that the evening of the accident was the first time he had ever allowed Clint to drive his truck. In fact, Ashley Selecman, who was with A.J. and Eric earlier on the evening of the accident, specifically recalled in her statement to the police that A.J. and Eric had been joking about the fact that "every time they go over to Clint's house Clint gets drunk and steals the truck." She further noted, "Eric commented about last time [Clint] almost hit a parked car and A.J. laughed." Jason Selecman, who was also with A.J. and Eric earlier in the evening, provided a statement indicating that A.J. and Eric had been joking around "about how in the past Clint Smith would get drunk and take Eric's car." Eric asked Clint to drive earlier in the evening and, after they returned to Clint's house, the keys were left where Clint had easy access to them. Both Eric and Clint testified in their depositions that Eric had never told Clint he did not have permission to use the truck, and there is no evidence

that Eric had ever denied Clint permission to drive it.

Certainly, as noted by Safeco, it is undisputed that Clint was fifteen years old and did not have a driver's license or even a learner's permit. It is equally clear from the record and the pattern of conduct evidenced therein, however, that neither boy considered Clint's lack of a driver's license to be an impediment to his use of the truck. Thus, Clint's lack of a license cannot be said to be dispositive in determining whether he reasonably believed he had Eric's permission to use the truck.

While it is true that the Smiths cannot offer direct evidence contradicting the self-serving deposition testimony of Clint and Eric that Clint did not have permission to drive the truck on the night in question, the indirect evidence and the reasonable inferences therefrom are sufficient for a jury to disbelieve their claims and to find that Clint had permission to drive the truck. *See LeCave,* 73 S.W.3d at 646. The finder of fact could certainly find that the boys were lying about Clint's usage of the truck and Eric's permission to do so because admitting it would be against both of their interests. In light of Clint's prior repeated use of the truck with and without Eric present, Eric's awareness of Clint's dangerous proclivities with respect to driving the truck after consuming alcohol, the placement of the keys where Clint had easy access to them on the night of the accident, and the lack of any express restriction on Clint's use of the truck, an inference may certainly be drawn that Clint reasonably believed he had implied permission to drive the truck that evening. *See Hallquist,* 189 S.W.3d at 177; *LeCave,* 73 S.W.3d at 646. This inference, drawn from the circumstantial evidence, is sufficient to give rise to a dispute as to a material fact and, accordingly, defeat summary judgment.

Safeco also argues that Richard Cox, the registered owner of the truck, is the relevant person to consider when ascertaining whether Clint had permission to drive the truck. They point to Richard Cox's testimony that he told Eric never to let anyone else use the car, assert that this testimony is uncontroverted, and claim that Eric could not have had the authority to grant permission to Clint.

The issue with regard to coverage under the language of the Safeco policy, however, is whether Clint reasonably believed he had permission to use the truck, not whether he had actual permission from the vehicle's registered owner. According to his testimony, Clint thought Eric owned the truck, Eric referred to it as his truck, and there is no evidence that Clint was aware that Richard Cox was the registered owner or that Richard Cox had placed any restrictions on Eric's use of the truck or his authority to allow others to do so. *See Haulers Ins. Co.,* 272 S.W.3d at 907 (noting that there was no evidence that the driver knew the regular operator of the vehicle did not have the permission of the car's owner to allow others to use the vehicle).[3]

---

3. Safeco attempts to rely upon the decision in *Omaha Property & Casualty Insurance Co. v. Peterson,* 865 S.W.2d 789, 790–91 (Mo.App. W.D.1993), in arguing that summary judgment is appropriate. The policy language in that case, however, was significantly different than the case at bar. The policy, issued to the vehicle's owner, excluded coverage for "any person … using a vehicle without a reasonable belief that the person is *entitled* to do so." *Id.* at 790 (emphasis added). When considering entitlement to operate a vehicle, permission is merely one element to be considered, and other factors, like the driver's age and possession of a driver's license, must be considered. *Id.* at 791. Here, permission is the sole issue under the policy language.

For the foregoing reasons, the trial court's entry of summary judgment in favor of Safeco is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.