

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

CINDY LOCKHART, ET AL.,        )
                                    )
        Appellants,        )
                                    )
v.                             )        WD81952
                                    )
SUSAN CARLYLE,          )        Opinion filed:  June 25, 2019
                                    )
        Respondent.      )

## APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY, MISSOURI
## THE HONORABLE WILLIAM B. COLLINS, JUDGE

Before Division Three:  Thomas H. Newton, Presiding Judge,
Anthony Rex Gabbert, Judge and Edward R. Ardini, Jr., Judge

Cindy Lockhart and Dennis Lockhart ("the Lockharts") filed suit in the Circuit Court of Johnson County against Susan Carlyle ("Carlyle") alleging the wrongful death of their son, Tyler Lockhart, based on a theory of negligent entrustment of a vehicle. The Lockharts alleged that Carlyle, with knowledge that her adult son, Richard (Nick) Gallagher ("Gallagher"), was incompetent to drive an automobile on the public highways due to habitual recklessness, supplied Gallagher a vehicle that he negligently operated resulting in a crash that killed Tyler Lockhart, who was a passenger in the vehicle. The trial court granted summary judgment in favor of Carlyle. The Lockharts appeal. We affirm.

## I. Factual and Procedural Background

Gallagher is Carlyle's adult son. After graduating from high school, Gallagher moved from Missouri to Texas to help care for his grandparents.[1] While living in Texas, Gallagher was arrested for drug possession and domestic violence and spent time in both jail and rehabilitation. Gallagher lived in Texas for five or six years before moving back to Missouri to live with Carlyle.

Since his return to Missouri, Carlyle has furnished Gallagher with a place to live, food, utilities, and a cell phone. Gallagher has been employed only sparingly during this period having worked for Carlyle Van Lines for about a month in addition to performing other miscellaneous jobs such as snow removal and car repair.

Gallagher has been charged with numerous criminal offenses since his return to Missouri, several relating to the operation of a motor vehicle.[2] In relation to these charges, Carlyle has provided the financial means for Gallagher to retain legal counsel, post bond, and satisfy fines and court costs.

On January 8, 2016, Gallagher travelled to Kansas with Carlyle and Tyler Lockhart to purchase a 2003 Acura. A bill of sale reflects that the Acura was sold to Gallagher for $1,500.00.[3] A few days later, the vehicle was insured through a policy with American Standard Insurance Company of Wisconsin paid for by Carlyle that listed both Carlyle and Gallagher as the insureds. Gallagher registered the vehicle in his name, and only his name appeared on the title.

---

[1] Gallagher's father also lived in Texas at the time.

[2] Gallagher has been charged and convicted of operating a motor vehicle without proper registration and tampering with a motor vehicle. In addition, Gallagher has been charged with resisting arrest, driving while his driver's license was revoked, tampering with a motor vehicle, burglary, and possession of burglary tools.

[3] The parties dispute the source of the funds used to purchase the 2003 Acura. Carlyle claims that Gallagher used his own money to make the purchase. The Lockharts, relying primarily on inferences drawn from Gallagher's financial dependence on Carlyle, assert that Carlyle provided the necessary funds. We are directed to view the record in the light most favorable to the Lockharts and will assume, for purposes of our analysis, that Carlyle provided the funds for the purchase of the Acura.

On March 8, 2016, Gallagher had a court appearance scheduled in Grundy County, Missouri. Gallagher departed Carlyle's home for Grundy County in the Acura accompanied by Tyler Lockhart. Shortly thereafter, at approximately 7:00 a.m., the Acura was involved in an accident. According to the Highway Patrol's Incident Report, the vehicle was traveling northbound on Route 23 in an unincorporated area of Johnson County at an estimated speed of at least 87 miles per hour when Gallagher lost control and ran off the east side of the road. The vehicle flipped several times ejecting both Gallagher and Tyler Lockhart. Tyler Lockhart was killed. Gallagher was injured, but survived.

The Lockharts filed a Petition for Wrongful Death against Gallagher on April 12, 2016. The Lockharts settled their claim against Gallagher and filed an amended petition naming Carlyle as the defendant. The amended petition alleged that Carlyle was negligent in supplying Gallagher with the Acura based on Gallagher's history of reckless driving. Carlyle moved for summary judgment, arguing that the uncontroverted facts showed that she did not own or have control over the use of the Acura and thus could not be deemed to have entrusted it to Gallagher as a matter of law. The trial court granted summary judgment. The Lockharts appeal.

## II.    Standard of Review

"Whether the circuit court properly entered summary judgment 'is purely an issue of law which th[e c]ourt reviews *de novo*.'" *Smock v. Associated Elec. Coop., Inc.*, 567 S.W.3d 211, 217 (Mo. App. W.D. 2018) (quoting *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009) (additional citation omitted)). "When considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences." *Fouts v. Regency North Acquisition, LLC*, 569 S.W.3d 463, 465-66 (Mo. App. W.D. 2018) (citations omitted). A defending party can

3

demonstrate entitlement to summary judgment by exhibiting facts negating any of the plaintiff's necessary elements. *Parr v. Breeden*, 489 S.W.3d 774, 778 (Mo. banc 2016) (citation omitted). "[W]e will affirm the grant of a summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Fouts*, 569 S.W.3d at 466 (citations omitted).

### III.    Discussion

The Lockharts allege that the trial court erred in granting summary judgment, asserting that "someone who controls whether a habitually reckless driver owns or drives a car has sufficient control over the car to be negligent for supplying the car to that driver." The Lockharts argue that Carlyle's conduct in "paying for the car, acquiring insurance for the car, and insisting that [Gallagher] drive a low-value car" provided a sufficient evidentiary basis upon which a fact-finder could conclude that Carlyle entrusted the 2003 Acura to Gallagher. Carlyle counters that she did not own or otherwise possess the authority to exert control over the use of the vehicle and thus cannot be deemed to have entrusted it to Gallagher.

"Negligent entrustment is a variant of the common law tort of negligence." *Hays v. Royer*, 384 S.W.3d 330, 333 (Mo. App. W.D. 2012). Under a theory of negligent entrustment, a plaintiff must prove:

> (1) the entrustee was incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the entrustee to cause the plaintiff's injuries.

*Id.* (quoting *Hallquist v. Smith*, 189 S.W.3d 173, 175-76 (Mo. App. E.D. 2006)).

The negligent entrustment doctrine is patterned after two sections of the Restatement (Second) of Torts: sections 308 and 390. *See Hays*, 384 S.W.3d at 335, 337. Section 308 states:

4

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965). Comment a of this section notes that "[t]he words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity." Restatement (Second) of Torts § 308 cmt. a.

Section 390 is a "special application" of section 308. Restatement (Second) of Torts § 390 cmt. b. Section 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts, § 390.

Carlyle's motion for summary judgment specifically focused on negating the third element of a negligent entrustment cause of action by arguing there had been no "entrustment" of the 2003 Acura by Carlyle to Gallagher.[4]

The chattel at the heart of this case is a 2003 Acura that was involved in the tragic accident that took the life of Tyler Lockhart. As part of their negligent entrustment claim, the Lockharts must establish that Carlyle entrusted the Acura to Gallagher. In this regard, we are principally

---

[4] When the trial court's judgment does not set forth its reasoning, it "is presumed to have based its decision on the grounds specified in respondents' motion[.]" *Cent. Mo. Elec. Coop. v. Balke*, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003) (citation omitted). Because we presume that the trial court granted summary judgment based on the legal deficiency of the third element, we address only whether Carlyle can be considered to have entrusted the Acura to Gallagher as a matter of law.

focused on the level of dominion enjoyed by Carlyle over the vehicle—either through an ownership interest in the vehicle or by her authority to control its use. It is undisputed that Carlyle did not legally own the vehicle, as only Gallagher's name appeared on the vehicle's title. Consequently, in order to defeat summary judgment, the Lockharts were required to bring forward evidence that, if believed by the fact finder, would establish that Carlyle had a level of control over the Acura that was of a sufficient nature to support a finding that she entrusted it to Gallagher. After a review of the record before us, we affirm the trial court's grant of summary judgment in favor of Carlyle.

Due to Carlyle's lack of an ownership interest in the Acura, this case differs from the typical negligent entrustment case wherein an individual permits use of *their* property by a third party while continuing to maintain control over the chattel. As a result, the Lockharts understandably focus on the circumstances attendant to Gallagher's acquisition of the Acura with particular emphasis on the financial role played by Carlyle in that purchase and, relatedly, Gallagher's general financial dependence on Carlyle. Undoubtedly, Carlyle's financial assistance was critical to Gallagher's purchase of the Acura. Nevertheless, Carlyle was neither the buyer nor the seller of the Acura and the record contains no basis from which we can discern that she possessed any legal rights or control over the vehicle either before, or upon completion, of the sales transaction. Instead, Carlyle served as a facilitator of the transaction by providing the financial means for Gallagher to complete the purchase. In this regard, the Lockharts have directed us to no Missouri authority, and we have independently found none, holding that an individual or entity—be it a parent, sibling, friend, or bank—that simply provides the funding necessary to

complete a purchase is thereby deemed to have entrusted the chattel involved in the transaction to the third-party purchaser.[5]

The Lockharts seek support from our Supreme Court's recent decision in *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 324 (Mo. banc 2016),[6] in which the Court announced that a negligent entrustment claim can be brought against a seller of chattel. *Delana* constituted a significant departure from prior Missouri precedent[7] that had consistently held that a seller cannot be liable under a negligent entrustment theory because a seller permanently relinquishes any control over the chattel upon completion of the transaction. While *Delana* held that "negligent entrustment liability is not premised on the legal status of the transaction as a lease, sale, bailment or otherwise," the Court emphasized that negligent entrustment liability only applies to the "supplier" of a chattel. The Court explained that, under section 390 of the Restatement (2d) of Torts, "negligent entrustment occurs when the defendant 'supplies' a chattel to another" with actual or constructive knowledge that the entrustment creates an unreasonable risk of injury. 486 S.W.2d at 325. The Court quoted comment (a) to section 390, "which provides that negligent entrustment liability under section 390 attaches to any supplier, including 'sellers, lessor[s], donors or lenders.'"

---

[5] Our decision today should not be read to hold that an individual who provides the financial means to consummate a transaction can never be deemed an entrustor of the purchased chattel. Indeed, we acknowledge that additional facts, absent from the present case, could evidence sufficient control over the chattel to constitute an entrustment.

[6] In *Delana*, the plaintiff, who was the wife of a shooting victim, sued a gun store that sold her mentally-ill daughter a gun after the plaintiff warned the store that her daughter was mentally unstable. 486 S.W.3d at 319.The sellers moved for summary judgment, arguing that the negligent entrustment claim under Missouri law was preempted by the federal Protection of Lawful Commerce in Arms Act ("PLCAA"), and, relevant to this appeal, that the plaintiff failed to state a claim because Missouri did not recognized seller liability in a negligent entrustment action. *Id*. The Missouri Supreme Court disagreed, finding that "[t]he fact that Respondents supplied the firearm to [the daughter] through a sale does not preclude Appellant's negligent entrustment claim." *Id*. at 326.

[7] Prior to *Delana,* Missouri law did not recognize a negligent entrustment claim against a seller. *See Noble v. Shawnee Gun Shop, Inc*., 409 S.W.3d 476 (Mo. App. W.D. 2013); *Fluker v. Lynch*, 938 S.W.2d 659 (Mo. App. W.D. 1997); *Sansonetti v. City of St. Joseph*, 976 S.W.2d 572 (Mo. App. W.D. 1998).

*Id.* The Restatement elsewhere makes clear that a "supplier" means someone who "gives possession of a chattel for another's use":

> The rules stated in this Section and throughout this Topic [(*i.e.*, sections 388-390] apply to determine the liability of any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control . . . . These rules, therefore, apply to sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person. They apply to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous, and irrespective of whether the bailment is for use, transportation, safekeeping, or repair. They also apply to one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it. (See § 403.)

Thus, while *Delana* may have altered the scope of the negligent entrustment tort, it did not eliminate the fundamental requirement that the defendant must have "supplied" a chattel to a third party who causes injury with the chattel. This "supply" requirement was easily satisfied in *Delana* where the defendants were the sellers of the property and thus had an interest in and control over the chattel at the time of the sale and "entrustment." By contrast, Carlyle was not a seller, lessor, donor or lender of the Acura and, as a result, Carlyle had no ownership interest in or control over the Acura either before or after Gallagher's purchase.

In a further effort to embrace an overly broad concept of what constitutes a "supplier," the Lockharts argue that "[a] parent who controls whether an adult child owns or drives a car can be a supplier of the car." Missouri courts have not previously considered whether a parent can be an entrustor of a vehicle owned by an adult child,[8] but, as the parties acknowledge, other states have done so with inconsistent results. *Compare Broadwater v. Dorsey*, 688 A.2d 436, 437 (Md. App. 1997) (finding that "parents who sell or give an automobile to an adult child are not responsible

---

[8] Missouri courts have determined that parents can be deemed to have entrusted their own vehicles to their adult children. *See Hallquist v. Smith*, 189 S.W.3d 173 (Mo. App. E.D. 2006); *LeCave v. Hardy*, 73 S.W.3d 637 (Mo. App. E.D. 2002).

for damages when they lack the power to control the child or the automobile."); *and Zedella v. Gibson*, 650 N.E.2d 1000, 1004 (Ill. 1995) (finding that cosigning a loan "was merely a link in the chain that facilitated [his son's] acquisition, and subsequent possession and use, of the vehicle, but did not itself constitute an entrustment."); *with Vince v. Wilson*, 561 A.2d 103, 105 (Vt. 1989) (finding that the someone who provides funding to an incompetent driver can be considered an entrustor because "the issue is clearly one of negligence to be determined by the jury under proper instruction; the relationship of the defendant to the particular instrumentality is but one factor to be considered."). In deciding this issue, we note that the ability to entrust property is fundamentally grounded in the relationship between a purported entrustor and the subject chattel. In every Missouri decision recognizing a viable negligent entrustment claim, the defendant has exercised control of the chattel, or at a minimum has had the capacity to exercise control over the chattel either before and/or after the purported "entrustment." *See Hays*, 384 S.W.3d at 337 (stating that the plaintiff must show that the entrustor's right of control was superior to that of the entrustee's). The parent/adult child relationship between Carlyle and Gallagher simply cannot serve as a substitute to Carlyle's lack of authority or dominion over the Acura.[9]

The trial court did not err in granting summary judgment in favor of Carlyle.[10]

---

[9] This is particularly true on our record where Carlyle's lack of control over the Acura after the purchase is shown, in part, by the uncontroverted facts that Gallagher possessed the only set of keys to the vehicle, Gallagher never gave Carlyle "verbal right to control the use of the 2003 Acura," and Carlyle never operated the vehicle.

[10] The Lockharts also allege in their brief that the trial court erred in granting summary judgment against them because they made a submissible claim under general negligence principles. Carlyle argues that the Lockharts failed to sufficiently assert a claim under general negligence because they failed to plead facts showing that Carlyle had a duty to protect Tyler Lockhart from Gallagher's actions. We agree with Carlyle. In order to assert a claim of general negligence, a party has to plead facts showing the existence of a duty on the part of the defendant. *Hallquist*, 189 S.W.3d at 177-78. "A legal duty arises where: (1) imposed by the legislative branch; (2) imposed by the law based on a relationship between the parties or because the defendant must exercise due care to avoid a foreseeable injury because of a particular set of circumstances; or (3) a party assumed a duty." *Id.* at 178 (citation omitted). The Lockharts argue in their brief that Carlyle had a duty to protect their son because of a "special relationship" between Carlyle and Gallagher. The Lockharts point us to no cases stating that the relationship between a parent and an adult child is sufficient to establish any duty on the parent to protect third parties against the adult child's actions. We decline to find that such a duty exists. *See Hallquist*, 189 S.W.3d at 178 (declining to create a new cause of action based on a

9

## IV. Conclusion

The judgment of the trial court is affirmed.

 

EDWARD R. ARDINI, JR., JUDGE

All concur.

---

parent's liability for his or her adult child's actions). The Lockharts have pleaded no additional facts to support a finding of any duty on behalf of Carlyle based on a "special relationship." *See Williams v. Barnes & Noble, Inc.*, 174 S.W.3d 556, 561 (Mo. App. W.D. 2005) (stating that "[w]hen a defendant's actions are within a category not generally considered actionable, the specific facts on which liability is based must be pleaded with particularity."). Therefore, the Lockharts have not sufficiently pleaded a claim for negligence in addition to their negligent entrustment claim.